UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| BEVERLY GILLSON, in her individual capacity and as Special Administrator of the Estate of Jacob Lair,<br><br>Plaintiffs,<br><br>v.<br><br>THE CITY OF SPARKS (the legal entity controlling the Sparks Police Department); WASHOE COUNTY (the legal entity controlling the Washoe County Sheriff's Office); TASER INTERNATIONAL, INC., an Arizona corporation; TASER INTERNATIONAL, INC., a Delaware foreign corporation; DOES I through X in their individual and official capacity; DOES XI through XX in their individual and official capacity; DOES XXI through XXX in their individual and official capacity; DOES XXXI through XL in their individual and official capacity; and ROE Corporations XLI through L, inclusive,<br><br>Defendants. | 03:06-CV-00325-LRH-RAM<br><br>ORDER |

Presently before the court are several motions to dismiss filed by defendants Washoe County Sheriff's Office ("WCSO") (# 8[1]), Sparks Police Department (# 11), and TASER

---

[1]Refers to the court's docket number.

International, Inc. ("TASER") (# 32).  Plaintiff Beverly Gillson has filed oppositions (## 20, 26, 37), and a reply (# 39) was filed by TASER.  No reply was filed by either WCSO or the Sparks Police Department.

## I. Factual Background

This is a civil rights and wrongful death action arising from the death of Jacob Lair ("Lair").  On or about June 9, 2004, at approximately 4:00 p.m., officers of the Sparks Police Department entered Lair's home and found him asleep in a bedroom.  An altercation allegedly broke out when Sparks Police Department officers attempted to wake Lair.  At some point during these events, WCSO deputies arrived.  During the altercation, Sparks Police Department and WCSO officers allegedly utilized pepper spray and a Taser device on Lair both before and after he was hobbled and handcuffed.  The Taser devise was allegedly used on Lair ten to fifteen times.

Medical responders arrived at approximately 4:20 p.m.  Medical personal found that Lair did not have a pulse and was not breathing.  At 5:04 p.m., Lair was pronounced dead at the Washoe Medical Center.  An autopsy concluded that "Lair died of acute methamphetamine intoxication with associated (probable) cardiac arrhythmia while engaged in physical struggle with law enforcement officers involving 'taser gun', 'pepper spray', and restraints."  (First Am. Compl. (# 13) ¶ 24.)  On August 15, 2006, Plaintiffs filed their First Amended Complaint alleging causes of action pursuant to 42 U.S.C. § 1983, negligence, negligent supervision and training, wrongful death, negligent design, negligent manufacturing, failure to warn, and breach of implied warranty.

## II. Legal Standard

In considering "a motion to dismiss, all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party." *Wyler Summit P'Ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998) (citation omitted).  However, a court does not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations in plaintiff's complaint.  *See Clegg v. Cult Awareness Network*, 18 F.3d 752,

754-55 (9th Cir. 1994).

There is a strong presumption against dismissing an action for failure to state a claim. *See Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) (citation omitted). "The issue is not whether a plaintiff will ultimately prevail but whether [he] is entitled to offer evidence in support of the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) *overruled on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982). Consequently, the court should not grant a motion to dismiss "for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also Hicks v. Small*, 69 F.3d 967, 969 (9th Cir. 1995).

**III. Discussion**

As discussed above, three separate motions to dismiss have been filed. First, WCSO seeks dismissal arguing that it is not an entity that can be sued. Similarly, Sparks Police Department filed a motion to dismiss arguing that it is not an entity that can be sued. Finally, TASER filed a motion to dismiss arguing that it is not a proper defendant under 42 U.S.C. § 1983 and that Plaintiffs cause of action for breach of implied warranty must be dismissed.

**A. WCSO's and Sparks Police Department's Motions to Dismiss**

WCSO and Sparks Police Department argue that they are not entities amenable to suit under Nevada law. In opposition to the motion, Plaintiffs argue that the motions are moot because their First Amended Complaint corrects the deficiency by naming Washoe County as a party. The parties do not dispute that neither WCSO or Sparks Police Department are proper parties to this action. Furthermore, in filing the First Amended Complaint, Plaintiffs no longer name WCSO or Sparks Police Department as parties to this action. As there is no present dispute concerning whether WCSO or Sparks Police Department should be parties to this action, WCSO's and Spark Police Department's motions will be granted.

///

3

**B. TASER's Motion to Dismiss**

TASER is seeking dismissal of Plaintiffs' first, second, third, and eleventh causes of action. Plaintiffs' first three causes of action allege violation of 42 U.S.C. § 1983. TASER argues that these claims must be dismissed because it is not a state actor. Plaintiffs' eleventh cause of action alleges breach of implied warranty. TASER argues that Plaintiffs cannot succeed on this claim because Plaintiffs are not in privity with TASER and because Plaintiff failed to provide TASER with the required notice of the breach.

**1. 42 U.S.C. § 1983**

Section 1983 provides:

> [e]very person who, under color of [law] . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983. "A § 1983 plaintiff must demonstrate a deprivation of a right secured by the Constitution or laws of the United States, and that the defendant acted under the color of state law." *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)). "Acting under color of state law is 'a jurisdictional requisite for a § 1983 action.'" *Gritchen v. Collier*, 254 F.3d 807, 812 (9th Cir. 2001) (quoting *West v. Atkins*, 487 U.S. 42, 46 (1988)).

"'The ultimate issue in determining whether a person is subject to suit under § 1983 is the same question posed in cases arising under the Fourteenth Amendment: is the alleged infringement of federal rights fairly attributable to the [government]?'" *Sutton v. Providence St. Joseph Med. Center*, 192 F.3d 826, 835 (9th Cir. 1999) (quoting *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982)). A two part test is used to determine whether an alleged violation is fairly attributable to the government: 1) the deprivation must result from a government policy, and 2) the party charged with the deprivation must be a person who may fairly be said to be a governmental actor. *Id*.

TASER is a private entity.  There is a presumption that private conduct does not constitute government action.  *Id*.  "In order for private conduct to constitute governmental action, 'something more' must be present."  *Id*.  (citing *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 937 (1982)).  "Courts have used four different factors or tests to identify what constitutes 'something more': (1) public function, (2) joint action, (3) governmental compulsion or coercion, and (4) governmental nexus."  *Id*. at 835-36 (citations omitted).  This inquiry is not a "mechanistic formula" and is determined based on the circumstances of each case.  *Id*. at 836.

In this case, Plaintiffs argue TASER's conduct constitute government action under the governmental nexus test, the joint action test, and the public function test.  For the reasons discussed below, the court finds that TASER's conduct does not constitute government action.

**a.  The Public Function Test**

"'Under the public function test, when private individuals or groups are endowed by the State with powers or functions governmental in nature, they become agencies or instrumentalities of the State and subject to its constitutional limitations.'" *Kirtley*, 326 F.3d at 1094 (quoting *Lee v. Katz*, 276 F.3d 550, 554-55 (9th Cir. 2002)).  "The public function test is satisfied only on a showing that the function at issue is 'both traditionally and exclusively governmental.'" *Id*.

Plaintiffs argue that TASER performed a traditionally governmental function by creating policies and procedures for use of the taser gun, training officers in the use of the taser gun, providing forensic and evidentiary support for criminal cases, and internal affairs investigations and providing ongoing consulting services.

In *Neal-Lomax v. Las Vegas Metro. Police Dept.*, Lomax died following an altercation with police in which Lomax was tased a total of seven times with a taser manufactured by TASER. 2006 WL 2022989, *1 (D. Nev. 2006).  The Plaintiffs in that case alleged that TASER acted under the color of state law for purposes of a Section 1983 action.  In discussing the public function test, the court stated "[s]elling taser guns and training municipalities in the taser gun's use are not

1  functions traditionally and exclusively governmental in nature, and therefore performing such
2  activities does not convert Taser into a state actor." *Id*. at *7. The court continued, "training a
3  municipality on the proper use of a product does not convert an individual or a company into a state
4  actor for § 1983 purposes." *Id*. This court agrees. Taking all allegations in the First Amended
5  Complaint as true, as this court must, TASER is not a state actor under the public function test for
6  Section 1983.

### b. The Joint Action Test

8  "To be engaged in joint action, a private party must be a 'willful participant' with the State
9  or its agents in an activity which deprives others of constitutional rights." *Brunette v. Humane*
10 *Society of Ventura County*, 294 F.3d 1205, 1211 (9th Cir. 2002) (citing *Dennis v. Sparks*, 449 U.S.
11 24, 27 (9th Cir. 1980)). Under this theory, a private party is liable only if its actions are
12 "inextricably intertwined" with those of the government. *Id*. (citing *Mathis v. Pac. Gas & Elec.*
13 *Co.*, 75 F.3d 498, 503 (9th Cir. 1996)).

14 In this case, Plaintiffs allege that the officers at issue in this case are dependent upon
15 TASER for the deployment of taser devises. Specifically, Plaintiffs allege that TASER controls the
16 supply, deployment, and servicing of the devises. Plaintiffs further allege that TASER tells law
17 enforcement the policies and procedures for use of the devise. TASER, on the other hand, argues
18 that it does not dictate how, when where or why officers use the taser device.

19 In *Neal-Lomax*, the court stated, "[t]hat Taser manufactured a law enforcement weapon,
20 sold that weapon to [police officers], and then trained [those police officers] in the weapon's use,
21 does not make Taser a state actor under § 1983, nor does it make Taser a willful participant in the
22 alleged improper use of the weapon." 2006 WL 2022989 at *6. This court agrees. The allegations
23 in *Neal-Lomax* are virtually identical to those in the case at bar. Taking all Plaintiffs' allegations as
24 true, there was no joint action between TASER and the police officers who used the device on
25 Lair.

6

### c. The Government Nexus Test

The government nexus test requires the complaining party to show that "'there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself.'" *Blum v. Yaretsky*, 457 U.S. 91, 1004 (1982) (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)). "The purpose of this requirement is to assure that constitutional standards are invoked only when it can be said that the State is *responsible* for the specific conduct of which the plaintiff complains." *Id*.

Plaintiffs argue that the entwinement between TASER and the law enforcement officers is pervasive. Specifically, Plaintiffs allege that TASER deployed the tasers to the officers in this case, trained the officers, developed the policies and procedures used by the officers, provided forensic and evidentiary support for criminal cases and internal affairs investigations, and provided ongoing consulting services. Therefore, Plaintiffs argue, it would be a fair inference to say that the officers in this cases were merely implementing a policy of TASER when they tased Lair. TASER, in opposition, argues that supplying the taser devise along with providing training and implementing policies for their use is insufficient to hold TASER liable as a state actor.

The court finds that, taking all allegations as true and construing them in the light most favorable to Plaintiffs, Plaintiffs have failed to show a sufficiently close nexus between the state and TASER such that TASER may be treated as the state itself. Adopting Plaintiffs' argument "would make ever [police department] supplier a state actor under the Government Nexus test. By this standard, every car and gun manufacturer, which supplies [a police department] with the vehicles it drives and the weapons it uses, would be a state actor under § 1983, thereby substantially, and improperly, expanding the statute's scope." *Neal-Lomax*, 2006 WL 2022989 at *5. Because Plaintiffs have failed to show that TASER's actions are fairly attributed to the state, Plaintiffs Section 1983 causes of action will be dismissed.

///

### 2. Breach of Implied Warranty

TASER argues that Plaintiffs' breach of implied warrant claim should be dismissed because Plaintiffs are not in privity with TASER. Alternatively, TASER argues that Plaintiffs' claim for breach of implied warranty should be dismissed for failure to comply with the notice requirement of the Uniform Commercial Code. Plaintiffs oppose TASER's motion arguing that Lair is a member of the class of persons who qualify as a third-party beneficiary under Nevada law.

In *Amundsen v. Ohio Brass Co.*, the Nevada Supreme Court indicated that a claim for breach of implied warranty cannot be maintained in the absence of privity. *See Amundsen v. Ohio Brass Co.*, 513 P.2d 1234, 1235 (Nev. 1973). In this case, Plaintiffs argue that Section 104.2318 of the Nevada Revised Statutes negates the need for privity. Section 104.2318 provides:

> A Seller's warranty whether express or implied extends to any natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty. A seller may not exclude or limit the operation of this section.

Nev. Rev. Stat. § 104.2318. In other words, section 104.2318 extends a seller's implied warranty to people in the family or household of buyer or those who are guests in the buyer's home. Nev. Rev. Stat. § 104.2318. According to Plaintiffs, Lair is a "guest" within the meaning of Section 104.2318 because Lair resides in Washoe County and is a member of the class of persons likely to be injured by the product manufactured and sold to law enforcement.

Taking Plaintiffs' allegations as true, the court finds that Section 104.2318 is inapplicable to Lair. Lair is neither in the family or household of Washoe County nor is he a guest of Washoe County. The altercation between Lair and Police Officers occurred inside Lair's residence. The word "guest" generally refers to "a person entertained in one's house" or "a person to whom hospitality is extended." Merriam-Webster's Collegiate Dictionary 516 (10th ed. 2001). Interpreting the word "guest" to refer to the inhabitants of Washoe County is overly broad and inconsistent with the plain meaning of the statute. Because there is no privity between TASER and

Plaintiffs and because Lair was not a "guest" within the meaning of Section 104.2318, Plaintiffs cannot maintain a cause of action for breach of implied warranty. Plaintiffs' eleventh claim for relief will be dismissed.

IT IS THEREFORE ORDERED that WCSO's Motion to Dismiss (# 8) is hereby GRANTED.

IT IS FURTHER ORDERED that Sparks Police Department's Motion to Dismiss (# 11) is hereby GRANTED.

IT IS FURTHER ORDERED that TASER's Motion to Dismiss (# 32) is hereby GRANTED.

IT IS SO ORDERED.

DATED this 19th day of March, 2007.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE

9